**CAPITAL, INC., an Oklahoma Corporation, Appellant,**

v.

**NEW MEXICO EQUIPMENT CO., a New Mexico Corporation, Henry Lewis and Edith Lewis, Appellees.**

**No. 54570.**

Court of Appeals of Oklahoma, Division No. 2.

Oct. 27, 1981.

Released for Publication by Order of Court of Appeals Dec. 4, 1981.

Richard D. Hampton, Oklahoma City, for appellant.

James A. Kirk, Linn, Helms, Kirk & Burkett, Oklahoma City, for appellees.

BRIGHTMIRE, Judge.

The pivotal question presented is whether the unlawful acts defendants are charged with committing arise out of the transaction of business in or the commission of any acts in Oklahoma within the meaning of 12 O.S.1972 Supp. § 187 and 12 O.S.1971 § 1701.03.[1] The trial court held they did

---

**1.** § 187 reads in relevant part:

Any person, firm, or corporation ... who *does, or who has done, any of the acts hereinafter enumerated,* whether in person or through another, submits himself, or shall have submitted himself, and if an individual his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising, or which shall have arisen, from the doings of any of said acts:

not and dismissed the action after sustaining defendants' plea to jurisdiction.[2] Plaintiff appeals challenging the dismissal. We affirm.

## I

Plaintiff, Capital, Inc., filed this action May 18, 1979, alleging it is a small business investment company engaged in borrowing money from the U.S. Government's Small Business Administration and then using it to make loans to or investments in qualified business entities. The principal office of the Oklahoma corporation is in Oklahoma City, Oklahoma.

In 1962, Henry Lewis, an official of and principal stockholder in New Mexico Equipment Co., a New Mexico Corporation, came to Oklahoma City and, on behalf of defendant corporation, obtained a $70,000 loan from plaintiff. Lewis executed a promissory note for the amount borrowed and granted plaintiff a written option to purchase up to 800 shares of New Mexico Equipment Co. stock. In 1967, plaintiff bought 200 shares for $40,000 and increased the total loan amount to New Mexico Equipment, Inc. to $140,000. In 1978, Lewis again came to Oklahoma to propose another transaction.

Defendant corporation "is highly profitable and at all times solvent," and has repaid the loans as agreed.

Then what have the Lewises done wrong? Plaintiff details several defalcations like funding the purchase of a home and its furnishings with corporate funds, diverting corporate money for the support of the Lewises' children, paying themselves excessive salaries, and using corporate funds to finance the purchase of a business building and then leasing it to the corporation for an excessive rental. Plaintiff also complains that the Lewises have refused to provide it with adequate and timely financial information about the corporation and they have wrongfully denied it a right to participate in corporate affairs and profits as a stockholder by failing to hold stockholders' meetings and by refusing to pay reasonable dividends.

For these transgressions plaintiff says it has been damaged in the amount of $324,281 and it wants a judgment against the Lewises for this amount. It also wants: (1) a certified audit of the defendant firm and its officers; (2) the Lewises to transfer to the defendant corporation all assets they hold which belong to it; (3) the Lewises to return all diverted money to the corporation; (4) the Lewises removed from their corporate positions; and, finally (5) the Lewises restrained from paying themselves any salaries or from paying corporate money to defend this action.

It is significant that none of the condemned misfeasance or malfeasance is alleged to have occurred in Oklahoma, nor is it said to be related to any act within this state.

## II

Plaintiff says that it has sufficiently pleaded minimum contacts made by defendants in Oklahoma to permit the courts of this state to exercise personal jurisdiction over the New Mexicans without offending traditional notions of fair play and substantial justice—a criterion composed in *International Shoe Co. v. State of Washington*.[3]

(1) the transaction of any business within this STATE;

(2) the commission of any act within this State;

\* \* \* \* \* \*

§ 1701.03 reads in relevant part:
(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action or claim for relief arising from the person's:
(1) transacting any business in this state;

**2.** The court secondarily held that "a more orderly administration of justice" would result from the case being heard in New Mexico. Whether this is an appropriate application of the *forum non conveniens* doctrine we need not determine in view of our disposition of plaintiff's first proposition.

**3.** 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945). The court in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), reaffirmed the minimum contact standard with-

At the same time plaintiff recognizes the import of *Crescent Corporation v. Martin*[4] as a minimum contact case and agrees that the construction placed on our long arm statutes quoted in footnote one is that "plaintiff's cause of action must arise out of or be based upon the same acts of defendant alleged to confer jurisdiction in personam." It contends the concept is inapposite here, however, because of what it perceives as a factually distinguishable situation. The main difference, it says, is that the *Crescent* court made a point of the fact that plaintiff had not shown "where the contract was entered into," whereas here plaintiff has alleged that two loans and a stock option contract were executed in Oklahoma City.

Plaintiff, we think, does not completely understand the *Crescent* opinion, particularly with reference to the meaning of the principal for which it concedes the case stands. It is true the *Crescent* facts differed in detail from those we have here, but in terms of operative effect they are closely analogous. For jurisdictional purposes the *Crescent* plaintiff alleged defendant had made several contacts in this state *prior to* the execution of the contract sued on. His cause of action, however, was not based on anything having to do with the earlier contacts, but on a contract of employment regarding which, the court emphasized, there was no allegation that it was made in Oklahoma, or that it was to be performed in Oklahoma, or that it was to be construed and enforced under the laws of this state. Thus, in holding that the trial court had no in personam jurisdiction over the foreign defendant, the court said it was not enough to allege that the foreigner had at some time or other transacted business in this state; our long arm statutes require that the cause of action must arise out of or be based on the same acts that are relied on to obtain jurisdiction.

The operative factual situation here is remarkably similar to the one in *Crescent*. The acts plaintiff relies on to confer juris-

diction are entirely different from and unrelated to those underlying its cause of action. Its lawsuit is not based on nor does it pertain to either an Oklahoma related loan or stock option agreement nor does its cause of action arise out of either transaction. All of these contracts have been fully executed and performed. Plaintiff's cause of action arises out of and is based on acts or omissions that occurred at a later date beyond the bounds of, and without a tangible connection with, Oklahoma.

Hence, it logically follows that plaintiff's cause of action did not arise out of nor is it based on the same acts it pleads to confer jurisdiction on the courts of this state.

We hold, therefore, that the plaintiff has not pleaded a cause of action which has arisen from the transaction of business or the commission of any act in Oklahoma within the meaning of our long arm statutes.

Affirmed.

BACON, P. J., and BOYDSTON, J., concur.

---

out indicating any inclination to expand its scope.

